UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIGHT HARRY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>KCG AMERICAS LLC ("KCG"), et al.,<br><br>Defendants. | Case No. 20-cv-07352-HSG<br><br>**ORDER GRANTING MOTION TO DISMISS AND GRANTING MOTION TO DEEM PLAINTIFFS VEXATIOUS LITIGANTS**<br><br>Re: Dkt. Nos. 26, 28 |

Pending before the Court are Defendants' motion to dismiss Plaintiff Bright Harry and Ronald S. Draper's complaint and motion to deem Plaintiffs vexatious litigants. Dkt. Nos. 26, 28. The Court finds these matters appropriate for disposition without oral argument and the matters are deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **GRANTS** the motions.

## I. BACKGROUND

This is not the first case that Plaintiffs have brought against these Defendants.[1] Each Plaintiff filed his own separate case in 2017 and 2018 respectively. Harry filed a pro se complaint in this district on April 26, 2017. *See Harry v. KCG Americas LLC*, No. 17-cv-02385-HSG ("*Harry Case*"), Dkt. No. 1. Draper filed a virtually identical pro se complaint in this district approximately one year later on April 27, 2018. *See Draper v. KCG Americas LLC*, No. 18-cv-02524-HSG ("*Draper Case*"), Dkt. No. 1. Both cases asserted claims relating to technical difficulties that Harry allegedly experienced while using an electronic trading platform to trade

---

[1] Defendants in this case include KCG Americas, LLC, Daniel B. Coleman, Carl Gilmore, Greg Hostetler, Main Street Trading, Inc., Patrick J. Flynn, Wedbush Securities, Inc., Edward W. Wedbush, ION Trading, Inc., Andrea Pignataro, Robert Sylverne, Computer Voice Systems, Inc., Paul Sturm, and Scott William Benz.

commodity futures spreads in an account held by his business partner, Draper, from 2013 to 2015. These two cases were found related under Civil L.R. 3-12, and assigned to this Court. *See, e.g.*, *Harry Case*, Dkt. No. 97.

In both the *Harry Case* and the *Draper Case*, Plaintiffs alleged that in 2013, Harry entered a business venture with Draper to trade electronic commodity futures spreads. *See, e.g.*, *Harry Case*, Dkt. No. 75. On November 6, 2013, Main Street Trading connected Draper and Harry with KCG, a broker with whom Plaintiffs opened a trading account. *See id.* at ¶¶ 23, 28–30, 34. The account was opened under Draper's name, and Draper "contributed the $275,000 Initial Good Faith Deposit (Investment Money) for the joint venture." *See id.* at ¶¶ 19, 30, 34. Harry, in turn, "contributed cash in form of operational expenses, hardware/software purchases and trading software payments for the Joint Venture," and was involved in the actual trading. *Id.* at ¶¶ 7, 19. Draper thus remained a "passive [i]nvestor." *See id.* at ¶ 19. KCG was later acquired by Wedbush, another broker. *Id.* at ¶ 38. At all relevant times, KCG and Wedbush outsourced the management of their trading platform to two entities: CVS and ION. *Id.* at ¶¶ 43–44.

Plaintiffs further alleged that beginning on November 15, 2013, Harry regularly experienced technical issues with the trading platform. *See id.* ¶¶ 104–144. On that day, for example, the platform failed "to route and clear" his trade orders. *Id.* at ¶ 104. Such issues persisted through April 28, 2015. *See id.* at ¶¶ 105–144. Plaintiffs alleged that some of these failures resulted in missed trade opportunities. *See id.* at ¶¶ 107, 115, 135–37. When Harry finally "closed out all his open trading positions" on April 28, 2015, only $6,621.49 of Draper's initial contribution of $275,000 remained in the account. *Id.* at ¶ 144.

Plaintiffs alleged that this loss was due to Defendant's fraud, which included concealing the problems with the electronic trading platform and Defendants' own "precarious financial situation." *See, e.g.*, *id.* at ¶¶ 35–38, 73–77, 84–102. Based on these facts, Plaintiffs asserted numerous causes of action, including fraudulent concealment, fraudulent misrepresentation, breach of fiduciary duty, breach of contract, "aiding and abetting" fraud, violation of several California consumer protection statutes, and "employment of manipulative computer software programs, computer servers, electronic trading facility and manipulative scheme to defraud" them.

*See id.* at ¶¶ 178–287. The *Draper Case* also asserted a claim for elder financial abuse. *See Draper Case*, Dkt. No. 1 at ¶¶ 220–227.

On March 7, 2018, the Court dismissed the operative complaint in the *Harry Case*, finding that Harry (1) lacked standing to seek the vast majority of his requested relief because Draper had contributed the $275,000 with which he traded, and the trading account was in Draper's name; and (2) failed to state a claim under Federal Rule of Civil Procedure 9(b) with respect to any of his personal losses. *See* Dkt. No. 74. The Court gave Harry one opportunity to amend. *See id.* at 7. Harry filed a second amended complaint on April 3, 2018. *See* Dkt. No. 75.

Defendants ultimately filed motions to dismiss in both the *Harry Case* and *Draper Case*. *See Harry Case*, Dkt. Nos. 86, 89, 90; *Draper Case*, Dkt. Nos. 13, 18, 21. On August 27, 2018, the Court granted Defendants' motions and directed the Clerk to close the cases. *See Harry Case*, Dkt No. 123; *Draper Case*, Dkt No. 66. In the *Harry Case*, the Court again found that Harry lacked standing to recover losses associated with the $275,000 that Draper had contributed, and that Harry failed to provide any factual support regarding any other losses that he may have incurred himself. *See Harry Case*, Dkt No. 123. In the *Draper Case*, the Court found that Draper's federal causes of action were barred by the two-year statute of limitations. *See Draper Case*, Dkt. No. 66. The allegations in the complaint made clear that Draper was aware of Defendants' alleged fraud by April 28, 2015, when he and Harry shut down the trading account. *See id.* at 8. However, Draper did not file his complaint until 2018, and the statute of limitations on Draper's federal claims ran almost a year before he filed the *Draper Case*. *Id.* The Court declined to exercise supplemental jurisdiction over Plaintiffs' state law claims in both the *Harry Case* and *Draper Case* and dismissed them without prejudice to refiling them in state court. *Id.* The Court dismissed the federal claims in both cases with prejudice. *Id.*

Draper asked the Court to vacate its order dismissing the complaint. *See Draper* Case, Dkt. No. 79 at 2. Plaintiffs then filed a "joint motion" to vacate the judgments in both the *Harry Case* and *Draper Case*. *See Harry Case*, Dkt. No. 134; *Draper Case*, Dkt. No. 77. Plaintiffs cited various bases for relief, including a violation of Federal Rule of Civil Procedure 12(b)(7) for failing to join parties, the Supreme Court's decision in *Lucia v. Securities and Exchange*

3

*Commission*, manifest errors of fact and law and manifest injustice, violations of their Constitutional rights, and fraud. *Id.* The Court rejected Plaintiffs' arguments and denied the motion to vacate. *See Harry Case*, Dkt. No. 147; *Draper Case*, Dkt. No. 94. Plaintiffs then filed joint "notices" to "join" each other's cases as indispensable parties. *See, e.g.*, *Harry Case*, Dkt. Nos. 138, 139; *Draper Case*, Dkt. Nos. 83, 84. Plaintiffs also filed several letters with the Court describing their "legal nightmare" with Defendants, asking the Court to reconsider the dismissals, and attempting to relitigate their cases. *See Harry Case*, Dkt. Nos 131, 132, 146, 151, 152, 154; *Draper Case*, Dkt. Nos. 85, 91, 99, 100, 102.

Plaintiffs then appealed to the Ninth Circuit. *See Harry Case*, Dkt. No. 150; *Draper Case*, Dkt. No. 98. On May 14, 2020, the Ninth Circuit affirmed the dismissals. *See Harry Case*, Dkt No. 155; *Draper Case*, Dkt No. 103. The mandates issued on September 25, 2020 (*Draper Case*) and October 5, 2020 (*Harry Case*) respectively. *See Harry Case*, Dkt No. 157; *Draper Case*, Dkt No. 104.

Two days after the mandate issued, Harry filed a motion to file a supplemental memorandum with this Court to vacate the judgment, reopen the case, and add Draper as a party to his case. *See Harry Case*, Dkt. No. 158. The Court denied the request and cautioned Harry that no further filings would be accepted in the closed case. *See Harry Case*, Dkt. No. 159. Plaintiffs nevertheless filed motions to stay the judgments in their respective cases. *See Harry Case*, Dkt. No. 160; *Draper Case*, Dkt. No. 106. The Court denied these motions. *See Harry Case*, Dkt. No. 161; *Draper Case*, Dkt. No. 107. Harry then filed another motion to reopen his case and vacate the judgment. *See Harry Case*, Dkt. No. 164. The Court denied this as well. *Harry Case*, Dkt. No.165.

At the same time, Plaintiffs jointly filed the present action on October 13, 2020. *See* Dkt. No. 1 ("Compl."). The 163-page complaint generally asserts the same causes of action against the same Defendants based on the same alleged transactions and events as those asserted in the *Harry Case* and *Draper Case*. Plaintiffs also now allege that Defendants' alleged conduct was the result of "racketeering activities," and Plaintiffs assert several new claims against Defendants under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq. See id.*

at ¶¶ 270–349. Plaintiffs allege that Defendants engaged in a "fraudulent scheme to make money" by failing to test the functionality and reliability of the electronic trading platform before inducing Plaintiffs to open a trading account with them. *See, e.g.*, *id.* at ¶ 277. As before, Plaintiffs allege that the platform was "dysfunctional," and this dysfunction caused them to lose thousands of dollars. *See id.* at ¶ 75.

## II. MOTION TO DISMISS

Defendants argue that Plaintiffs' federal causes of action are barred by res judicata and the applicable statute of limitations, and that Harry lacks standing to bring his asserted claims. *See* Dkt. No. 26. Defendants also argue that Plaintiffs have failed to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), and urges the Court to decline supplemental jurisdiction over Plaintiffs' state law claims. *Id.* Because the Court finds that the res judicata issue is dispositive, the Court does not reach Defendants' alternative arguments.

### A. Res Judicata

Res judicata, also known as claim preclusion, limits the ability of litigants to relitigate matters. The doctrine "serves to promote judicial efficiency by preventing multiple lawsuits and to enable the parties to rely on the finality of adjudications." *Dodd v. Hood River County*, 136 F.3d 1219, 1224–25 (9th Cir. 1998). Res judicata applies where there is "(1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties." *Ruiz v. Snohomish Cty. Pub. Util. Dist. No. 1*, 824 F.3d 1161, 1164 (9th Cir. 2016) (quotation omitted). Where these factors are met, res judicata not only bars claims that were actually adjudicated in the prior action, but also *all claims that could have been raised* in that action. *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997). Here, the Court finds that all three requirements for res judicata are satisfied.

#### i. Identity of Claims

Courts determine whether there is an identity of claims by assessing four factors: "(1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether

substantially the same evidence is presented in the two actions." *ProShipLine Inc. v. Aspen Infrastructures Ltd.*, 609 F.3d 960, 968 (9th Cir. 2010) (emphasis omitted) (quotation omitted). The first of these factors is the most important. *See Turtle Island Restoration Network v. U.S. Dep't of State*, 673 F.3d 914, 917–18 (9th Cir. 2012).

"Whether two suits arise out of the same transactional nucleus depends upon whether they are related to the same set of facts and whether they could conveniently be tried together." *ProShipLine*, 609 F.3d at 968 (emphasis omitted) (quotations omitted). The Ninth Circuit has explained that although "[a] plaintiff need not bring every possible claim," "where claims arise from the same factual circumstances, a plaintiff must bring all related claims together or forfeit the opportunity to bring any omitted claim in a subsequent proceeding." *Turtle Island*, 673 F.3d at 918.

Here, the present case and the *Harry Case* and *Draper Case* clearly "arise out of the same transactional nucleus of facts." In fact, a large portion of the allegations in the complaints are nearly identical. In all three cases, Plaintiffs allege that Defendants fraudulently induced Plaintiffs to move their commodity futures trading account to Defendants' platform on November 6, 2013. *See, e.g.*, *Compl.* at ¶¶ 1, 5–7, 38–40, 72, 84, 86–107, 189–93. Plaintiffs allege that they experienced myriad problems on the platform, which thwarted Harry's ability to trade on behalf of Draper. *See id.* at ¶¶ 74, 135, 141–81. As a result, on April 28, 2015, Harry closed out all open trading positions. *Id.* at ¶ 179. Plaintiffs may have included more detail about the ways in which Defendants induced them to open an account with them and the problems that Harry experienced on the trading platform, but Plaintiffs did not allege distinct and unrelated facts.

Similarly, that Plaintiffs have added new RICO claims and refer to Defendants as members of an "enterprise" does not alter the identity of claims among the cases. Plaintiffs' RICO claims are premised on the same underlying facts: Defendants withheld information about the problems with their trading platform and thus fraudulently induced Plaintiffs to open an account with them. Defendants alleged conduct also spans the same period of time, from 2013 to April 2015. There are thus no new factual developments underlying these RICO claims. In their opposition brief, Plaintiffs even acknowledge that "Defendants were given notice of the RICO claim in both the

6

*Harry Case* and *Draper Case*." *See* Dkt. No. 32 at 6–7. In any event, to the extent the RICO claims may be considered new to this case, Plaintiffs could have brought these claims in the *Harry Case* and *Draper Case*.

Plaintiffs rely heavily on the Supreme Court opinion in *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322 (1955), to suggest that the doctrine of res judicata nevertheless cannot apply. *See* Dkt. No. 32 at 5–7. Plaintiffs suggest that they have provided "new facts or a worsening of the earlier conditions" that precludes the application of the doctrine. *Id.* Plaintiffs identify three "new" facts, related to how much of the $275,000 initial deposit and software subscription Harry and Draper each provided. *See id.* at 10–11. Plaintiffs contend that, despite its prior allegations, Harry contributed some of his own money and therefore has standing. *Id.* Plaintiffs, however, misunderstand the holding in *Lawlor*. In *Lawlor*, the Supreme Court merely concluded that a prior judgment "cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Lawlor*, 349 U.S. at 328. But as explained above, this case does not raise new claims or present new allegations that could not have been brought in the *Harry Case* and *Draper Case*. The amount of money that each Plaintiff contributed to their business venture from 2013 to 2015 was certainly knowable (if not known) when the *Harry Case* and *Draper Case* were filed.[2]

### ii. Identity of Parties

The cases also involve the same parties. The *Harry Case* was filed by Harry, the *Draper Case* was filed by Draper, and both Harry and Draper are the Plaintiffs in this case. Moreover, Defendants in this case are the exact same Defendants named in both the *Harry Case* and *Draper Case*. *Compare* Compl. *with Harry Case*, Dkt. No. 75; *Draper Case*, Dkt. No. 1.

In opposition, Plaintiffs argue that the present action involves different parties because after it filed the complaint in this action, one of Defendants—Edward W. Wedbush—died. *See* Dkt. No. 32 at 11. Mr. Wedbush was sued as the founder and CEO of Wedbush Securities, Inc.

---

[2] As explained in more detail below, the Court also has serious concerns about how Plaintiffs have changed their allegations over time and in response to the Court's legal findings, particularly about Harry's alleged monetary contributions.

7

*See* Compl. at ¶ 24. Two weeks after Plaintiffs filed the complaint in this action, they filed a document entitled "suggestion of death upon the record under Rule 25(a)(1) and motion for substitution of party." *See* Dkt. No. 5. They explained that Mr. Wedbush died in January 2020 (ten months before they filed the complaint), and requested that Gary L. Wedbush be substituted under Federal Rule of Civil Procedure 25 as "the Co-President of Wedbush Securities, Inc.". *See id.* at 2.

Plaintiffs did not file this purported request as a noticed motion, and the Court did not formally grant the substitution. It is not clear from the record whether Gary L. Wedbush would be a proper party to substitute for purposes of Rule 25. *See, e.g.*, Fed. R. Civ. P. 25(a)(1) (requiring substitution "of the proper party"); *Mallonee v. Fahey*, 200 F.2d 918, 919 (9th Cir. 1952) ("Rule 25(a)(1) applies only to the substitution of legal representatives"). But even assuming he was properly substituted into this action, "[t]he substituted party steps into the same position as [the] original party." *Hilao v. Est. of Marcos*, 103 F.3d 762, 766 (9th Cir. 1996). Thus, Gary L. Wedbush could not be substituted as a "new" Defendant, but rather as equivalent to Mr. Wedbush, sued in his role as "Co-President of Wedbush Securities, Inc." *See* Dkt. No. 5.

Moreover, res judicata may apply where there is "privity between parties." *Ruiz*, 824 F.3d at 1164. Privity is a flexible concept that "exists when a party is so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved." *See Stratosphere Litig. L.L.C. v. Grand Casinos, Inc.*, 298 F.3d 1137, 1143, n.3 (9th Cir. 2002). Plaintiffs' allegations against Gary L. Wedbush as "Co-President of Wedbush Securities, Inc." are the same as those against the now-deceased Mr. Wedbush, and their interests are thus aligned across all three cases. As noted above, Gary L. Wedbush would "step[] into the same position" as Mr. Wedbush. *Hilao*, 103 F.3d at 766. Therefore, even if Gary L. Wedbush were properly substituted into this action, there is privity between Mr. Wedbush and Gary L. Wedbush such that this factor is satisfied.

### iii. Final Adjudication of Merits

As noted above, the Court dismissed the federal claims with prejudice in the *Harry Case* based on lack of standing and in the *Draper Case* based on the statute of limitations. Plaintiffs

8

nevertheless urge that "the Judgment on the *Harry Case* and the judgment on the *Draper Case* were not final judgments on the merits." *See* Dkt. No. 32 at 2. Plaintiffs are simply wrong as a matter of law.

"A dismissal on statute of limitations grounds is a judgment on the merits that operates as res judicata." *Ruiz*, 824 F.3d at 1164 (quotation omitted). This factor is therefore satisfied for Draper's federal claims, and Draper's claims are barred by res judicata. As for Harry's federal claims, Plaintiffs are correct that constitutional standing is generally a threshold issue that the Court must address before reaching the merits of a case. *See, e.g.*, *Bird v. Lewis & Clark Coll.*, 303 F.3d 1015, 1019 (9th Cir. 2002). And the Ninth Circuit has cautioned that dismissing claims "with prejudice" "is not always conclusive for the purpose of res judicata and, indeed, does not equate to an adjudication on the merits when the dismissal is for lack of jurisdiction." *Ruiz*, 824 F.3d at 1168.

Nevertheless, the Court finds that the related doctrine of collateral estoppel, or issue preclusion, still prohibits Harry from relitigating whether he has standing to bring his asserted claims. "Collateral estoppel, or issue preclusion, bars the relitigation of issues actually adjudicated in previous litigation between the same parties." *Kamilche Co v. United States*, 53 F.3d 1059, 1062 (9th Cir. 1995), *opinion amended on other point on reh'g*, 75 F.3d 1391 (9th Cir. 1996). The Court must consider the following factors:

> (1) the issue must be identical to one alleged in prior litigation; (2) the issue must have been "actually litigated" in the prior litigation; and (3) the determination of the issue in the prior litigation must have been "critical and necessary" to the judgment.

*Beauchamp v. Anaheim Union High Sch. Dist.*, 816 F.3d 1216, 1225 (9th Cir. 2016) (quotation omitted).

The issue in the *Harry Case* is identical to the issue here—whether Harry has standing to bring his asserted claims related to the technical difficulties that he allegedly experienced while using an electronic trading platform from 2013 to 2015. The parties also fully litigated that issue in the *Harry Case*. Harry had an opportunity to fully brief and provide argument on the issue of

9

standing twice, in response to both of Defendants' motions to dismiss. The Court also gave Harry an opportunity to amend his complaint to address this standing issue before dismissing the federal claims with prejudice. *See Harry Case*, Dkt. No. 74 at 7. Harry filed a second amended complaint, but failed to address the deficiencies that the Court identified. *See Harry Case*, Dkt. No. 75. Standing was thus a critical and necessary part of the judgment in the *Harry Case*: the Court dismissed Harry's federal claims in the *Harry Case* with prejudice for failure to allege standing. The Court accordingly finds that the determination that Harry lacked standing in the *Harry Case* precludes relitigation of the same standing argument in this case. *See, e.g.*, *Johnson v. Chain*, 967 F.2d 587 (9th Cir. 1992) (finding doctrines of res judicata and collateral estoppel applied where plaintiff "had a full and fair opportunity to litigate the issue[] of standing" in the earlier case); *accord Perry v. Sheahan*, 222 F.3d 309, 318 (7th Cir. 2000) ("A dismissal for lack of jurisdiction precludes relitigation of the issue actually decided, namely the jurisdictional issue.").

That Plaintiffs now allege for the first time that Harry contributed $18,157.40 of the $275,000 Initial Good Faith Deposit and $6,078.60 for trading software fees does not alter the application of collateral estoppel. *See* Compl. at ¶¶ 11, 14–15. Rather, it highlights exactly why collateral estoppel should apply. The complaints in the *Harry Case* and *Draper Case* clearly indicated that Draper—and not Harry—had provided the $275,000 Initial Good Faith Deposit and that fees for software were paid from Draper's account. The Court therefore concluded that the standing defect was not amenable to remedy, and so dismissed the federal claims with prejudice. Now, years later, Plaintiffs have changed their allegations in what appears to be an attempt to manufacture standing for Harry. The Court has substantial concerns about this tactic, and questions the truthfulness of Plaintiffs' new allegations in light of this reversal. But in any event, as the Ninth Circuit has explained, "once an *issue* is raised and determined, it is the entire issue that is precluded, not just the particular arguments raised in support of it in the first case." *Kamilche*, 53 F.3d at 1063 (emphasis in original). Harry had ample opportunity to explain what personal costs he incurred as a result of Defendant's alleged misconduct, and did not do so. Application of res judicata and collateral estoppel in these circumstances thus serves the central purposes of "protect[ing] [the prevailing party] from the expense and vexation attending multiple

lawsuits, conserv[ing] judicial resources, and foster[ing] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153–54 (1979).

\* \* \*

The Court **GRANTS** the motion to dismiss the federal claims on res judicata and collateral estoppel grounds, and again declines to exercise supplemental jurisdiction over the state law claims.

### III. MOTION TO DEEM VEXATIOUS LITIGANT

#### A. Legal Standard

"The All Writs Act, 28 U.S.C. § 1651(a), provides district courts with the inherent power to enter pre-filing orders against vexatious litigants. However, such pre-filing orders are an extreme remedy that should rarely be used. Courts should not enter pre-filing orders with undue haste because such sanctions can tread on a litigant's due process right of access to the courts." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007). At the same time, "[f]lagrant abuse of the judicial process cannot be tolerated because it enables one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants." *De Long v. Hennessey*, 912 F.2d 1144, 1148 (9th Cir. 1990).

The Ninth Circuit has adopted a four-factor test to determine whether a pre-filing review order is warranted. Specifically, a pre-filing review order may be appropriate if: (1) the plaintiff was given adequate notice and an opportunity to oppose the order; (2) there is an adequate record for review; (3) the Court makes substantive findings as to the frivolous or harassing nature of the litigant's actions; and (4) the order is narrowly tailored "to closely fit the specific vice encountered." *Molski*, 500 F.3d at 1057.

#### B. Discussion

For the Court to declare Plaintiffs vexatious litigants, all four factors identified above must be met. And because Plaintiffs are self-represented, the Court exercises caution in considering whether and how to fashion an appropriate prefiling order. *See De Long*, 912 F.2d at 1147 (9th Cir. 1990). Nevertheless, the Court finds that all four factors are met in this case.

//

### i. Notice and Opportunity to be Heard

Plaintiffs were given adequate notice and an opportunity to be heard because Defendants filed the motion to declare Plaintiffs vexatious litigants, and Plaintiffs filed an opposition to the motion. *See* Dkt. No. 33. The notice requirement has thus been satisfied.

### ii. Adequate Record for Review

The second requirement is that the Court compile an adequate record for review. "An adequate record for review should include a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed." *Molski*, 500 F.3d at 1059. As detailed in Section I above, Plaintiffs have repeatedly filed cases and motions against Defendants relating to their use of—and problems with—Defendants' electronic trading platform to trade commodity futures spreads from 2013 to 2015. The Court also highlights the following:

- On October 14, 2015, Plaintiffs filed a complaint with the Commodity Futures Trading Commission ("CFTC") against many of the same Defendants named in this action and the *Harry Case* and *Draper Case*, asserting claims relating to the same purported technical difficulties that Harry had experienced while using the electronic trading platform. *See Harry Case*, Dkt No. 43-5, Ex. A5. On March 8, 2016, the CFTC's Director of Office of Proceedings entered an order dismissing the complaint for lack of jurisdiction and standing. *See Harry Case*, Dkt No. 43-6. Harry appealed the order. *See Harry Case*, Dkt No. 43-8, Ex. A8 at 1. The appeal was denied four days later by the CFTC, which also issued terminating sanctions against Draper. *See id.*; *see also Harry Case*, Dkt No. 43-7, Ex. A7; Dkt. No. 43-9, Ex. A9. Plaintiffs later filed a petition for judicial review with the Ninth Circuit, which was denied. *See Draper v. CFTC*, Case No. 18-73070 (9th Cir.).

- On April 26, 2017, Harry filed the *Harry Case*. *See Harry v. KCG Americas LLC*, No. 17-cv-02385-HSG. As has already been discussed at length, the Court dismissed the complaint with one opportunity to amend. *See* Dkt. Nos. 74, 75. Harry amended, and Defendants again moved to dismiss the complaint. *See* Dkt. No. 86. The day that Defendants' filed their second motion to dismiss in the *Harry Case*, Draper filed the *Draper Case*. *See Draper v. KCG Americas LLC*, No. 18-cv-02524-HSG. The Court granted Defendants' motions to dismiss and directed the Clerk to close the cases. *See Harry Case*, Dkt No. 123; *Draper Case*, Dkt No. 66. Plaintiffs then repeatedly asked the Court to vacate its orders dismissing the complaint and attempted to relitigate the same cases. *See Harry Case*, Dkt. Nos. 131, 132, 134, 138, 139, 146, 151, 152, 154; *Draper* Case, Dkt. Nos. 77, 79, 83, 84, 85, 91, 99, 100, 102.

- The Ninth Circuit affirmed the dismissals and issued mandates. *See Harry Case*,

Dkt Nos. 155, 157; *Draper Case*, Dkt Nos. 103, 104.

- After the Ninth Circuit affirmed the dismissals, the parties then repeatedly sought to reopen the *Harry Case* and *Draper Case* and stay the judgments. *See Harry Case*, Dkt. No. 158, 160, 164; *Draper Case*, Dkt. No. 106.

- Plaintiffs then jointly filed the present action, seeking to litigate the same issues against the same Defendants.

Accordingly, given the record compiled from Plaintiffs' prior actions against Defendants, and the record on file in the current case, the Court concludes the record is adequate for review. *Molski*, 500 F.3d at 1057.

### iii. Substantive Findings as to Frivolous or Harassing Nature of Plaintiffs' Litigation

An injunction cannot issue merely upon a showing of litigiousness." *Moy v. United States*, 906 F.2d 467, 470 (9th Cir. 1990). Instead, "[t]o decide whether the litigant's actions are frivolous or harassing, the district court must look at 'both the number and content of the filings as indicia of the frivolousness of the litigant's claims." *Molski*, 500 F.3d at 1059.

Although the number of separate cases here does not necessarily establish Plaintiffs as vexatious, the meritless nature of their filings and motions does. As noted above, Plaintiffs have filed nearly identical claims against Defendants before the CFTC and this Court on three separate occasions. Even assuming the *Harry Case* and *Draper Case* were not frivolous or harassing when initially filed, Plaintiffs have failed to acknowledge the legal effect of this Court's orders dismissing these cases, let alone the Ninth Circuit's affirmance of these orders. Through serial motion and "letter" filings, Plaintiffs have repeatedly asked the Court to reconsider its past orders, reopen the cases, and reconsider the merits of Plaintiffs' claims. Even after the Ninth Circuit affirmed the dismissals, Plaintiffs continued their efforts to relitigate these cases. When this Court denied their requests to reopen the *Harry Case* and *Draper Case*, they simply refiled a new case. The Court finds such conduct frivolous and harassing. *See, e.g., Huggins v. Hynes*, 117 Fed. App'x 517, 518 (9th Cir. 2004) (affirming district court's pre-filing order in part because plaintiff "abused the courts by repeatedly relitigating the same controversy and repeatedly filing frivolous

motions and pleadings").[3] The Court is also concerned with the evolving nature of Plaintiffs' allegations. Their allegations about the money Harry purportedly paid as the Initial Good Faith Deposit, for example, are undermined by their previous allegations, and appear to be simply an attempt to make an end-run around the Court's prior orders.

The Court understands that Plaintiffs feel aggrieved. But the Court has ruled on their cases, and the Ninth Circuit has affirmed those rulings. Plaintiffs have nevertheless demonstrated an intent to continue frivolously litigating against Defendants without acknowledging the myriad CFTC and judicial rulings against them. In letters filed with this Court, for example, Plaintiffs have stated that they "are not intimidated and will not allow these [Defendants] in collusion with CFTC [to] get Judgment by Deceits, Judgement by Lies, and Judgment by Fraud, either at the CFTC Tribunal, the Ninth Circuit or in this Court." *See, e.g.*, *Draper Case*, Dkt. No. 91 at 1. In opposition to the motion to deem Plaintiffs vexatious, Plaintiffs urge that they "will finally have their Day in this Court" and it is [j]ust a matter of time." *See* Dkt. No. 33 at 2. They further asserted that "Defendants and especially their Attorneys can run but they cannot hide forever from answering Plaintiffs' Complaint." *Id.* at 2, 4.

Plaintiffs have caused needless expense to Defendants, and have imposed an unnecessary burden on the courts by ignoring the legal effect of the prior dismissals. And absent a pre-filing order, there is every indication from the record—including their opposition to this motion—that Plaintiffs will continue to harass Defendants. The Court therefore finds that Plaintiffs' conduct against Defendants has been both frivolous and harassing.

### iv. Narrowly Tailored Order

As to the fourth factor, Defendants request an order requiring the following:

> [A] pre-filing order prohibiting either of the Plaintiffs from filing any complaint against Defendants concerning the commodities trading account held by Draper with Defendants KCG Americas LLC and later its successor, Wedbush Securities, Inc., without first submitting the complaint for pre-filing review and receiving written authorization from a judge of this District to file it.

---

[3] As an unpublished Ninth Circuit decision, *Huggins* is not precedent, but may be considered for its persuasive value. *See* Fed. R. App. P. 32.1; CTA9 Rule 36-3.

14

*See* Dkt. No. 28 at 6. Given the totality of the circumstances, the Court finds that such an order is appropriate, and is narrowly tailored to address Plaintiffs' repeated filings regarding the same underlying facts and theories.[4] *See Molski*, 500 F.3d at 1064.

\* \* \*

Accordingly, the motion to declare Plaintiffs vexatious litigants is **GRANTED**. Plaintiffs are adjudged vexatious litigants and ordered to obtain leave of Court before filing or causing to be filed any new action in this District against Defendants.

## IV. CONCLUSION

Accordingly, the Court **GRANTS** the motions. The Clerk is directed to enter judgment in favor of Defendants and to close the case.

The Clerk of this Court may not file or accept any further complaints filed by or on behalf of Plaintiffs Bright Harry or Ronald S. Draper that name as Defendants KCG Americas, LLC, Daniel B. Coleman, Carl Gilmore, Greg Hostetler, Main Street Trading, Inc., Patrick J. Flynn, Wedbush Securities, Inc., Edward W. Wedbush, Gary L. Wedbush, ION Trading, Inc., Andrea Pignataro, Robert Sylverne, Computer Voice Systems, Inc., Paul Sturm, or Scott William Benz concerning the commodities trading account held by Draper with Defendants KCG Americas LLC and its successor, Wedbush Securities, Inc. If Plaintiffs wish to file a complaint against any of these entities and/or individuals, they shall provide a copy of any such complaint, a letter requesting that the complaint be filed, and a copy of this Order to the Clerk of this Court. The Clerk shall then forward the complaint, letter, and copy of this Order to the Duty Judge for a determination whether the complaint should be accepted for filing (*i.e.*, whether it concerns this commodities trading account).

//

//

//

---

[4] The Court notes that nothing in this order or the Court's prior orders precludes Plaintiffs from pursuing their state law claims in state court if they have a legal basis to do so.

15

Plaintiffs are warned that any violation of this Order will expose them to contempt proceedings and appropriate sanctions, and any action filed in violation of this Order will be subject to dismissal.

**IT IS SO ORDERED.**

Dated: 7/1/2021

HAYWOOD S. GILLIAM, JR.
United States District Judge